ADDISON,<br>January,<br>1835.<br>Middlebury <i>et al</i><br><i>vs.</i><br>Rood.

Judgment of county court is reversed.

---

WILLIAM H. WHITE *vs.* CYRUS BOOTH *et al.*

(*In Chancery.*)

ADDISON,<br>January,<br>1835.

The erecting and using a church on lands to which a party has a doubtful claim, for which he has commenced his action of ejectment at law, is not such a nuisance or waste as to entitle him to the interposition of this court in granting an injunction.

This was a bill in chancery, praying for an injunction. The substance of the bill and answer is sufficiently presented in the opinion of the court.

*P. C. Tucker, for the orator,* cited Treatise of Equity, 10—15. Fonblanque, 23. 1 Maddock's Chancery, 126, 159-60. *Pope* vs. *Carl,* 2 Atk. 342. *Smith* vs. *Cook,* 3 Atk. 381. *Pomeroy* vs. *Mills,* 3 Vt. Rep. 413. Bac. Abr. 651. 2 Brown's Chan. Rep. 125. 2 Harrison's Chancery, 182. Hardress, 96.

The opinion of the court was delivered by

MATTOCKS, Chan.—The bill states, that the orator is the grantee of several lots of land, within the original charter limits of the town of Ferrisburgh, and that he holds title to said lands by several legal conveyances from the proprietors of said town, and is thereby entitled, as he is advised and believes, to a share or shares of any undivided lands in said town, which may yet remain therein, or which may have heretofore reverted in any manner since the supposed final division in said town ;—that in May, 1785, a proprietors' meeting was held in said town, when it was voted, that the "town plot," so called, now the city of Vergennes, be laid out as No. 84 in said town, near New Haven falls ;—that in Oct. 1786, another meeting was held, when it was voted, that the plot afore-

ADDISON,
January,
1835.

White
vs.
Booth et al.

said should be divided into three divisions, at the discretion of a committee appointed for that purpose, and they should be allowed in said plot lands for a green, public buildings and a market place, to be laid out by the judgment of said committee, who should afterwards report their doings ;—that the committee reported to an adjourned meeting, when the report was accepted and the plot established ;—that said committee, according to the vote, laid out a certain lot in the plot as a public lot of land, to be used for the purpose of having a court house and jail erected thereon, and for no other purpose whatsoever ;—that on the 24th day of September, 1833, the inhabitants of the town plot of Ferrisburgh, then and now being a public corporation, by and under the name and description of the " mayor, aldermen, common council and freemen of the city of Vergennes," at a public meeting duly warned and assembled, assuming upon themselves the right to control said court house and jail lot, did by public vote resolve and order that the court house and jail lot in the city of Vergennes be and is hereby granted to the protestant episcopal society, for the purpose of erecting a church, &c. except that part on which the court house now stands, &c. exonerating said city from all liability in case said society should lose said lot ;—that said meeting was thin, only 21 voting, 16 for and 5 against the motion ;—that the defendant and others, as a committee of said protestant episcopal society, by virtue of said vote, and with no other authority, have broken up the soil and erected thereon a large brick building, and thereby committed great waste, &c. ;—and that the orator, in order to have the title of himself and other proprietors of said town of Ferrisburgh tried and established, has instituted an action of ejectment against said protestant episcopal society in Vergennes, which is still pending. The bill then prays, that the society, and all persons acting under them, may be enjoined from finishing or using said building until the final decision of the suit at law, and then if the plaintiff there succeeds, such other relief as shall be proper.

The answer of the defendants admits, that the premises described were laid out by a committee of the proprietors, as set forth in the bill, to put a court-house and jail upon, but deny that it was set apart for *that* purpose and no other. They also admit a vote of the inhabitants of the city, and then say they are a committee appointed by the protestant episcopal society to build them a church, and fully believing that the inhabitants of the city had a right to make the grant, they executed and finished a house of public worship, which has been consecrated, and the society intend to con-

Addison,
January,
1835.
White
vs.
Booth et al.

tinue the use of it, and they submit that the right should be settled in the suit at law. They deny the orator's title, and say that they believe the proprietorship of the town of Ferrisburgh was dissolved in 1800.

Upon this bill and answer, the question is, whether an injunction should be granted, not to prevent the building or completing the church, for that is already done, but to prevent its being used for public worship. It would be rather irreverent to call that staying waste, and there would seem to be no good reason to order the suspension of the worship, even if the plaintiff's title was indisputable, and the defendants had entered without color of right. It might be otherwise, if the defendants had turned the orator and others out of a building by them erected or owned. The trespass, if any, was upon the land by building the church ; but the use of an additional sanctuary in the city, pending the controversy at law, cannot injure the orator, but may be salutary to the citizens. When the bill was brought, probably the building was not finished or consecrated, for the complaint states, that the defendants "had broken up the soil and erected a large brick building thereon." Although we are to consider the facts as they now exist, yet as they were, the application was very late. Why was not the application made, at latest, as soon as they broke ground? Why was it delayed until a great expense had accrued in a good cause, which, according to the orator's view, in that place was a great public nuisance which must be abated?

Besides, the title of the orator and his associates is not clear and certain. It is at least obsolete, and possibly extinguished, and the right of the defendants to the easements they claim has some plausibility, as the proprietors voted "lands in said town plot for a green, public buildings, and market place." Whether the doings of the committee, and the vote of the proprietors thereon, restricted this vote, and confined the use of the public lot for a court house and jail, may be a question. These and other points are fit subjects for the decision of a court of law, where the plaintiff will be entitled to his legal rights, however severely it may affect others ; and his redress, if he prevails, will be quite adequate, as he may perhaps obtain the bettering house without being subject to the betterment act, and these defendants are not stated in the bill to be unable to respond in damages. At all events, the society for whom they act are quite responsible ; for although the highly respectable protestant episcopal mother church in Vermont has by some invidious persons been considered but a step-mother to the children of

ADDISON,
January,
1835.

White
vs.
Booth et al.

the state, yet she has been very prosperous in her temporal affairs, and by her glebes and her good luck in the law, as successors of the propagation society, has obtained a very solid footing in this state, and possesses, it is believed, a very pretty rent roll.

Upon the whole, we think the plaintiff, if he has a right, has an adequate remedy at law; that the defendants have not acted against equity and good conscience; that the orator was too late in his application, and his title doubtful, and the defendants' claim not clearly invalid. These reasons are quite sufficient to induce us to refuse an injunction, independent of a disposition to walk softly upon consecrated ground.